Case No. 25-1234, Allison Reedy et al. v. Huron School District et al. Oral argument to be 15 minutes for appellate, 15 minutes to be shared by defendants. Mr. Kolovos for the appellate. I reserved 5 minutes for rebuttal. Very well. Thank you. Driving up here yesterday from Detroit, now I have a new appreciation for a whiteout when it's on the freeway. Thank you for being here. In fact, I appreciate everybody that's here. Absolutely, as I was doing my cross when I was driving. Does the client appreciate me doing this? Anyway. I did it on the plane yesterday, too. Thank you. Excuse me. The questions, of course, just to hit on the high points. I know everybody's reviewed the briefs. Is there qualified immunity with regard to what took place? And is there a question of fact for a jury to determine certain issues? To get a feel for it is that this statement was made to another classmate. And it wasn't a statement that said, I'm going to shoot the school up. I'm going to do what they did in Oxford. Can I stop you there? I was a bit confused by the procedural posture of this case because the district court, as I understand it, it's a motion for judgment on the pleadings. And as I understand the rules for those types of motions, you're only supposed to look at the complaint and ask if the complaint states a claim. It's very similar to a motion to dismiss. But there was a lot of discussion of outside the complaint materials. And so this is one example of that. Do we have to accept at this stage that the boy said, I'm not going to shoot up the school versus what the school thought the boy said, which was the exact opposite of that? So I guess I was a little confused by how the procedural framework should affect things at this stage. I understand. I think it is relevant. It's very relevant. Procedurally, looking at the pleadings, that this isn't what he said. That the teacher thought he said something else. And so she panicked and took him into a room where he was interrogated without his mother, with his mother right outside the door. And Michigan has a double Miranda when it's a minor. You have to read the rights to the minor and you have to read the rights to the parent. You have to get okay from both. And she said, can I go in with my, no, we'll let you know when you can go in. And she was never able to go in. So I think the facts are important concerning this. And the pleadings, I think, spell that out, at least to get past that hurdle of the pleadings, that it's well pled. And to go to the next step of, are there any facts that could make a question of fact for the jury? Any disputed facts? I find the First Amendment issue somewhat tricky in terms of how we're supposed to analyze it. Do you think we should ask if the statement the school board thought the child made is protected? Or do you think we should ask whether the statement the child, at least alleges he made, is protected? I think the school board should do this. That when they have a hearing with regards to whether they're going to expel him, perfect day student, by the way, they should have the hearing. They should give proper notice to all witnesses. And there was a witness right in the room that they never called. They wouldn't allow to be called. But there was a decision already by a phone call to the person that represented the minor that we pretty much, they made up their mind, sets a posture that it's almost a kangaroo court that we're going to go into. So that's your due process claim. I was asking about the First Amendment. I'm just curious how to analyze. I don't believe my First Amendment is the strongest argument that I'm doing. So you would concede that we should look at the statements that the school board thought he made? Yes. And then how, yeah, so how. That would get the hearing going. But once you have that concession, you think that a threat to shoot up a school should be protected by the First Amendment? I'm sorry, could you repeat that? Okay, so you're conceding that the school board's belief about what the student made should be the relevant inquiry for First Amendment purposes, for free speech purposes. And that statement is he threatened to shoot up the school. Just like a bench trial. And it's a question of fact for them. And what they believe, okay, that's what they believe. But first have a full hearing. Okay, so that's your due process argument. But the free speech argument is what the student said is protected. And I just don't see a world in which a threat to shoot up a school is protected. If you say that, absolutely, I agree. I'm there with them to take them out. But if you never said that, and you talked to the student he was talking to, they never even talked to him. He was sitting in the audience at the hearing. They wouldn't even allow him to come up. So you've got your tunnel vision. And he did do a First Amendment. He did say something that was okay not to be interpreted that way. When they misinterpreted it, I guess that's... At bottom then this case boils down to did he receive enough process to kind of have his day in court to explain what he said. I agree with that part of your statement.  Just one moment, please. Then ultimately, well, he was arrested. His mother couldn't talk to him, whatever, at 15 years old. A student. He gets handcuffed. Gets put into detention center. He's assaulted in the detention center. And, you know, it's an honor student. So does it have emotion? Yes, it has emotion. Does it have damages? Absolutely. Is it a question of fact? I believe absolutely. What is the process problem? So what should they have done? Well, first of all, they should have investigated it totally. They didn't investigate it. They had a tunnel vision. Remember, the student that he was talking to. Nobody talked to that student. They could have talked to him right then and there. They chose not to. They just went by what did the teacher say. My client never admitted anything like that. He told the truth. The other student would have told the truth. Got that tunnel vision that you're going out. We've already made up our mind. So he finally gets out of detention center. There is a bench trial. And the judge finds it not guilty. Not only that, but the judge on the record says, Why was this even brought? Nobody did any type of investigation. I mean, the judge really came down on all the defendants. Came down on everybody. And so we're there. And then also that the state claims, state of Michigan claims, is that intentional infliction of emotional distress and gross negligence. I understand the high standard with intentional infliction. But the gross negligence, to me, there's no question about it. There's no question. It didn't take a lawyer or anybody else to interview at least the child that it was talked to. At least, you know. So I believe, again, they had a tunnel vision. And that's what they were going to do. You're out of here. Then they put that in his record. That he did a threat like that. So now he tries to go to schools. All the private schools won't take him because there's a threat. And it's never been proven until a judge heard the case. Finally, he gets into another school and graduates very well. The state law claims, even if all the federal was not proper or for whatever reason should be dismissed, any of the state claims, and I believe that the judge should have remanded it back down. I'm sorry. I apologize. I believe the judge should have found that there was a question of fact with regard to gross negligence and intentional infliction of emotional distress, but for sure gross negligence because it was. It wasn't just simple negligence. So these are questions of fact, respectfully. Have you appealed the ruling on the Michigan gross negligence claim? No. It was all in one complaint. So that's before the court right now. But did you raise it in your brief? Arguments not raised in your opening brief are deemed forfeited. And as I understand it, your brief just cut and paste. I know. I believe it's mentioned in there. I thought you appealed the intentional infliction of mental distress claim, but that was the only state claim that you. And it was gross negligence, too. I'm out of time right now. But you say that you did appeal that and you argued that. Yes. Right. And a record was made of it, and I reserve five minutes. Okay. Judge Gilman, do you have any further questions at this time? Not at this point. All right. Thank you, counsel. You'll have your five minutes rebuttal.  Thank you. Good morning. Good morning. Annabelle Shea on behalf of Huron Public Schools, Andrew Tomaszak, Ronnie Severin, and Donovan Rowe. There's just a few things that I'd like to respond to co-counsel or opposing counsel. So I did want to – I know, Your Honor, Judge Murphy had a question regarding the procedural posture of this case. There were a lot of documents that were attached that were outside of the pleadings, but those were parts of public records or they were mentioned in the complaint central to the claim, so they were properly reviewed by the district court and really became part of the pleadings themselves. Don't you think at this stage, though, we at least have to accept as true the student's statement that he didn't make the threat? I would disagree, Your Honor, just based on the specific constitutional claims that are at issue in this case. You did have a question earlier about the First Amendment claim and what the standards should be on that. It seemed that opposing counsel doesn't dispute the fact that when we have a case that's involving a student threat, that that is not protected under the First Amendment. But even applying the tinker test when you're – Is there any case law on this point? It seems – I don't know of any of that. When you're asking whether speech that a student made in schools is protected, that you actually have to determine what the speech is, of course, or what was said. Do you just assume that the state, whatever the school official said the student said is the speech? There's a couple of cases that I would like to point to on this court's attention. The fending education case, which I know that you're familiar with, that case really looked into this idea of the true threats when we're faced with students. I agree with the point that if he made it, it seems obvious to me. The question is whether he actually made it, though, and how that implicates the First Amendment. I think under the tinker test, we're looking at it from the objective standpoint of was it reasonable for the school officials to have a reasonable forecast of substantial disruption. So it's from the perspective of the school officials. I think even looking at what D.R. said, the light most favorable to him, at the very least, it's a veiled threat. I think when you're looking at it in the full context of what happened, he made this statement eight days after the shooting at Oxford High School, a nearby high school. So when you're applying that tinker standard of whether this can be regulated, it's inherently reasonable to think that a school official who has a report that a student is making this statement, that a threatening statement such as this would cause fear and panic within the student body, which that is the tinker standard. But is there a potential that that threat is going to cause this disruption of the school environment? Is that the standard that we look at, the fact that the school district has the report as opposed to whether or not it actually is true? Yes, and I would point to there's a good case from the Second Circuit. There aren't a lot of student threat cases that are reported from the Sixth Circuit. But we did cite it in our brief, and that's the Cuff, B.C., versus Valley Century School District 677F.3D109. And in that case, the Second Circuit specifically addressed the fact that whether it was considered to be a joke or not is of no consequence of whether that is going to have a reasonable forecast of substantial disruption. And as I was pointing out earlier in the defending education case that Judge Murphy, that was your opinion, that in certain types of student statements, less evidence is going to be necessary to prove whether there is going to be a reasonable forecast of substantial disruption just by the very nature of the statement. When you're dealing with student threats of this caliber, especially when you're talking about a statement that's uttered eight days after the Oxford school shooting, it's going to reasonably cause fear and panic within the student body. And we want schools to respond. We want schools to take these statements seriously. And I think that given those circumstances, it was very reasonable for the school to consider the statement to be threatening and respond the way that they did. What do you make of the process arguments that both of the students who were having the conversation disavowed any threat and you just seemed to kind of railroad them and expelled them really quickly? And with this criminal investigator, I know that's not the school board's folks, but it does seem like quite the big misunderstanding led to a substantial amount of harm on this poor child. My response to that would be that for the procedural due process argument, that DR was provided all the process that was due under the 14th Amendment. And there's a recent case that we cited in a notice of supplemental authority, the Halas case. It's pretty identical fact patterns to this case. You had a student in that case that made a school shooting threat and was expelled for 180 days. And one of the arguments that was made was that in that case, the police determined that the threat was not credible, that he didn't have access to a weapon. And that information was not shared with the school board. And this court found that the failure to provide that information to the school board didn't change the outcome that he was provided with all the process that was due. And the same would be true in this context. He was provided with verbal and written notice of the charges against him. He was able to present his side of the story several times before the hearing that he was provided, before the school board and the expulsion hearing. And with regard to the witness statements, I think you were mentioning that, he was provided with the substance of what those students said. He was provided with the substance of those witness statements, and that is similar to the same process that was provided in the Halas case. Would he have had a right to have the student he was talking to come in and testify before the board? There's no authority from the Sixth Circuit that would suggest in this context, in a K through 12 expulsion hearing, that he would be entitled to that. Just entitled to the evidence against him. And in this case, that would be sufficient to have the substance of what those, of what the witnesses said. And I don't think that it changes the outcome that you have students that they couldn't, in their statements that they didn't hear one way or the other what he said. At the end of the day, you have a teacher that said that she did witness him say that, you know, that he was making a threat against the school, and that's what they relied on. What is your, is there anything in the record of why the school board did not allow the other student to testify? At the hearing, at the expulsion hearing? He was right outside the room. No, there wasn't anything in the record of why students weren't permitted to testify. In these types of expulsion hearings, it's usually if you have witness statements that are redacted, there's FERPA and certain issues of why students can't be involved. But what the due process requires in this instance is just the substance of those witness statements are provided, so that he, DR, has the ability to share his side of the story or rebut those during the hearing, and he was given that opportunity. And like I said, in the Halas case, it's pretty identical. It doesn't say that he was required to cross-examine witnesses, or that he is entitled to present witnesses in order for him to meet those due process requirements. Could he have called the other student? Your DR, I mean, or the attorney for your client, not your client, the opposing, would he have had the right to call the other student? I would argue that he would not be entitled to call witnesses. So set aside due process, what does the school board's procedure say? Do in expulsion proceedings, there's no ability to have witnesses? I don't believe so. Let me say, I gather that DR's position is that his statement was actually, I'm not going to be like the student at Oxford to say, shut up or I'm going to shoot this place up. And why is it clear that that's not what he said? That I'm not going to be like the student at Oxford? What was reported from Ronnie Severin, that was the teacher at the time, was she reported to the police that she heard DR say in the classroom, if you don't shut up, I will shoot this place up like Oxford. And even looking at DR's statement, I'm not going to be like, shut up, or else I'm going to shoot up the school like Oxford. I mean, at best it's a veiled threat. It's still mentioning Oxford and substances, everything that the teacher is reporting. And what Andrew Tomasek indicated later on in the criminal hearing is, he took that as a potential threat and he responded in a way that he thought was necessary to protect the student body. Again, this was eight days after the Oxford school shooting. And this was a time where schools were flooded with similar threats and we were concerned with copycats. And so it's very reasonable that the school would act in the way that they did. And it might seem harsh years later, but we have to remember in the specific context that that statement was given and whether their actions were reasonable at that time. Can the two versions, the two statements, one by the school district employee, that she said, I heard him say, I'm going to shoot up like the Oxford shooter, can that be reconciled with a statement that he says he had a prefatory statement that unlike the Oxford shooter, I wouldn't shoot up? Can we reconcile it that maybe what she heard was the same statement, but she didn't hear the introductory phrase? Is that it? I mean, that's possible, but I can tell you that the disciplinary decision was based on the school district's belief that this was a potential threat. And that was the basis of the discipline. So when you look at the criminal hearing that was referenced by opposing counsel earlier, that's based on an entirely different standard. We're talking about whether there was beyond reasonable doubt that he had the intent to carry that out. And intent isn't relevant at this point, isn't relevant to the analysis before the court. We're looking at whether he made the threat and whether he was provided all the process that was due and then whether that was reasonable to regulate that type of speech. And I would submit to the court that it was inherently reasonable for the school district to regulate his speech based on the circumstances of this case. All right. I guess you're out of time. Anything else? No. All right. Judge Gilman, any further questions? Nothing further. All right. Further questions? All right. Let's hear from the co-defendant. Good morning, Your Honors. Michael Berger on behalf of Huron Township Police Department, Chief Robbins, and Lieutenant Gerard. The first thing I want to address is the procedural posture of this case. This was a motion for judgment on the pleadings, and as far as my briefing is concerned, I want the courts to take a look at that and realize I relied strictly on the pleadings and the exhibits that were attached to the pleadings. When we were looking at the factual record for that, it is the exhibits that trump the factual allegations in the complaint. I was trying to be very careful about that to ensure that you're only looking at what has been pled. As far as the claims are concerned on appeal, I read appellant's brief as being a false arrest claim under the Fourth Amendment and then a false arrest claim under state law and intentional infliction of emotional distress. I have re-reviewed everything. As far as the gross negligence, I do not see that being something that was appealed. My recollection is that was not even raised in the district court. As far as the Chief Robbins is concerned, he had no personal involvement in any of this. He was not involved in the investigation, so cannot be involved in any alleged constitutional violation. He would also be provided absolute immunity under the Governmental Tort Liability Act. As far as the state law claims, when we're looking at the false arrest claims, and really the state law claims, the dispositive issue is probable cause. Whether there's probable cause for an arrest in this particular case, Lieutenant Gerard did not personally involve himself in the investigation. He came after the fact. Officer Napo was the one that, the school liaison officer, was the one that involved himself in the investigation. He heard from Ms. Severin about the threat that she thought that she had heard. There were discussions and other written statements, of course, from D.R. that counteracted that. However, when looking at the totality of the circumstances, Lieutenant Gerard looked at the statements between Ms. Severin, D.R., and if you recall in my briefing, it had been indicated that D.R.'s denial of it was suspect because why wouldn't a kid who's scared in the moment deny the situation? Therefore, he had recommended, let's make the arrest, and then Officer Napo ended up making the arrest. This, under the Williams case that I cited in my brief, provides probable cause. The statements, Ms. Severin's specific statement, provides probable cause for the crime that D.R. was provided, which is a threat of violence to commit an act. As you know, the investigators also established that Ms. D.R. had access to weapons within the household. So because there's probable cause, you should affirm as to the dismissal of my clients. Anyone have any questions? Any questions of Judge Gilman? No questions. All right, thank you. Mr. Colvin, I'll see you at five minutes rebuttal. Thank you, Your Honor. We know that education is a right entitlement, and so it's protected to the highest degree. We know that having this right or entitlement per Constitution that an investigation should be done. I'm not second-guessing simple investigation or something minor. This is something the student that he talked to, why weren't they talking to him? Immediately rush him out in handcuffs. The guy didn't do anything wrong, the child. Again, credibility, straight-A student, honors. What did it go down to when he went to another school? D's. They couldn't wait. The same day they called the newspaper, the school. Put it in the newspaper. The client's mother's a realtor. Put it right on the front page. Bomb threat. Devastating, beyond devastating. You can just imagine if it happened in your household. Please just at least talk to the other student. No, we got this tunnel vision. And then they say, look at context. Well, that means that we look at context and we violate due process. Well, you know what was going on then? We can violate people's due process. We can violate their rights because of context. Something happened a few days before. That's not us. That's not the Constitution. It doesn't say look at context. Thank you. And I appreciate everybody that took the time out. And thank you. Thank you for your arguments. The case will be submitted.